**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order.

United States Courts
Southern District of Texas
FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JUL 0 9 2015

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | **15 CR 372** |
| IAIN NIGEL MACKELLAR, | § | |
| LAM NGOC TRAN aka MARK TRAN, | § | **UNDER SEAL** |
| ALLEN SMITH, and | § | |
| WILLIAM HUMPHREYS | § | |
| Defendants | § | |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
### (Conspiracy - 18 U.S.C. § 371)

## A. INTRODUCTION

At all times material to this Indictment:

1.    Merial Pharmaceutical Company ("Merial") was an animal health company located in Duluth, Georgia which manufactured and sold pharmaceutical drugs and pesticides for animals, including the pesticides Frontline and Frontline Plus, which are used to treat and control the spread of ticks and fleas on dogs and cats. On April 1, 1997, Merial registered its "Frontline" mark, U.S. Trademark Number 2,049,456, on the Principal Register of the U.S. Patent and Trademark Office. On September 16, 2003,

Merial registered its "Frontline Plus" mark, U.S. Trademark Number 2,763,796, on the Principal Register of the U.S. Patent and Trademark Office.

2.      The United States Food and Drug Administration (FDA) was an agency of the United States charged with the responsibility of protecting the health and safety of the American public by ensuring, among other things, that drugs sold for administration to humans and animals bear labeling containing true and accurate information.  The FDA's responsibilities include regulating the labeling and distribution of prescription drugs shipped or received in interstate commerce.

3.      The United States Environmental Protection Agency (EPA) was an agency of the United States charged with the responsibility of protecting the health and safety of the American public by ensuring, among other things, that pesticides bear labeling containing true and accurate information.  The EPA's responsibilities include regulating the labeling and distribution of pesticides shipped or received in interstate commerce.

4.      "Lot" means a batch, or a specific identified portion of a batch, having uniform character and quality within specified limits; or, in the case of a drug product or pesticide produced by continuous process, it is a specific identified amount produced in a unit of time or quantity in a manner that assures its having uniform character and quality within specified limits.

5.      "Lot number" means any distinctive combination of letters, numbers, or symbols, or any combination of them, from which the complete history of the manufacture, processing, packing, holding, and distribution of a batch or lot of drug or pesticide product or other material can be determined.

2

## THE CO-CONSPIRATORS

6.      Defendant IAIN NIGEL MACKELLAR, a resident of the United Kingdom, maintained accounts under A.E. GLOBAL and ABBY VET EXPORT, LLC., both of which are pet product supply companies located in the United Kingdom.

7.      Defendant LAM NGOC TRAN, aka MARK TRAN, was a resident of the State of California engaged in the business of buying and selling pet medication and products.

8.      Defendant ALLEN SMITH was a resident of the State of Arizona who served as an officer of the company SUN CITY PET MARKET, located at 10050 West Bell Road in Sun City, Arizona 85351, a business engaged in the sale of veterinary products.  Defendant ALLEN SMITH also owned RIZING SUN, LLC, located at 9186 West Potter Drive in Peoria, Arizona  85382, a business also engaged in the sale of veterinary products.

9.      Defendant WILLIAM HUMPHREYS was a resident of the State of Arizona and the owner of VETMARKET.COM, an online website that sold pet accessories and products.

10.      C.M. was a resident of the State of California and the owner of FLEA CONTROL ENTERPRISES, INC. ("FCE, INC"), located at 27134 Paseo Espada, Suite 302 in San Juan Capistrano, California 92675.  C.M. sold flea and tick medications along with prescription veterinarian drugs.  C.M. was not a veterinarian, pharmacist, licensed wholesaler, or licensed distributor of pharmaceutical drugs.  FCE was the sole supplier of

Frontline Plus for the retail chain Target for distribution to all Target stores throughout the United States.

## B. **THE CONSPIRACY**

11.     From in or about January 2008, and continuing thereafter to the present in the Houston Division of the Southern District of Texas and elsewhere,

IAIN NIGEL MACKELLAR,
LAM NGOC TRAN aka MARK TRAN,
ALLEN SMITH, and
WILLIAM HUMPHREYS,

defendants herein, did knowingly and willfully combine, conspire and agree together and with each other, and with C.M. and other persons both known and unknown to the Grand Jury, to commit certain offenses against the United States, including the following:

a.  To knowingly devise and intend to devise a scheme and artifice to defraud others, and to obtain money and property by means of one or more false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and pictures, in violation of Title 18, United States Code, Section 1343;

b.  To knowingly devise and intend to devise a scheme and artifice to defraud others, and to obtain money and property by means of one or more false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, and placed and

caused to be placed in an authorized depository for mail, to be sent and delivered by the Postal Service and private and commercial interstate carriers reboxed pet products not manufactured and approved for sale in the United States in boxes with labels made to appear as if the contents had been manufactured and approved for sale in the United States, in violation of Title 18, United States Code, Section 1341;

c.  To intentionally traffic and attempt to traffic in labels, documentation and packaging, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, in violation of Title 18, United States Code, Section 2320(a); and

d.  To knowingly import and bring into the United States merchandise contrary to law and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, in violation of Title 18, United States Code, Section 545.

## C. <u>OBJECT OF THE CONSPIRACY</u>

12.    It was the object of the conspiracy for the defendants and others to unlawfully enrich themselves by (1) obtaining cheaper veterinary products manufactured for overseas markets, (2) "reboxing" or repackaging those products in boxes with labels bearing counterfeit Frontline Plus marks and other markings to make it appear as if the

products had been manufactured and approved for sale in the United States, (3) importing the products into the United States under the false pretense that the products were destined for use by charitable organizations, and (4) then distributing such products for sale to consumers in the United States, all without the authorization of the manufacturer of Frontline Plus products.

## D. MANNER AND MEANS

13.     The manner and means of the conspiracy included, but were not limited, to the following:

a.     The co-conspirators would and did create boxes with counterfeit labels and packaging that bore the same Frontline Plus trademark as the genuine packaging made for sale in the United States.

b.     The co-conspirators would and did arrange for the placement of either counterfeit pesticide products or pesticide products not manufactured for the United States market nor approved by the EPA in the boxes bearing the counterfeit labels and packaging.

c.     The co-conspirators would and did falsely represent that the Frontline Plus pesticides conformed to specifications for the United States version of these products as regulated by the EPA.

d.     The co-conspirators would and did cause individuals to ship veterinary products, including pesticides, from Europe, Asia and elsewhere, in boxes with labels bearing counterfeit Frontline Plus marks into the United States.

e.     The co-conspirators would and did negotiate the sale of veterinary products in boxes with labels bearing counterfeit Frontline Plus marks with individuals known and unknown to the Grand Jury.

f.     The co-conspirators would use the United States Postal Service or another commercial or private interstate carrier to deliver these reboxed veterinary products into and throughout the United States.

g.     The co-conspirators would and did seek to avoid detection by United States Customs officials by causing shipments of veterinary products with labels bearing counterfeit Frontline Plus marks to be sent from an alleged charitable consignee that declared the products as "PC Products", which meant "Pet Care Products", with an accompanying letter  falsely stating that the products were a charitable donation as a result of hurricanes.

h.     The co-conspirators would and did accept wire transfers as payment for the shipment of veterinary products in boxes bearing counterfeit Frontline Plus labels and packaging.

i.     The co-conspirators would and did sell the counterfeit Frontline Plus to major retail stores in the United States, such as Target.

## E.  ACTS IN FUTHERANCE

14.     In furtherance of the conspiracy and to affect the objects thereof, the following overt acts, among others, were committed in the Southern District of Texas and elsewhere:

a. On or about October 2, 2012, a wire transfer originated from a bank account maintained by FCE, INC. to a bank account in the name of A.E. GLOBAL in the amount of $66,503.40 for the sale of reboxed pet products with labels bearing counterfeit Frontline Plus marks.

b. On or about July 2013, C.M. sold $866,000 worth of products accompanied by labels bearing counterfeit Frontline Plus marks to D.L., who suspected the products were counterfeit based upon the appearance of the package.

c. On or about September 6, 2013, a wire transfer originated from a bank account maintained by FCE, INC. to a bank account in the name of VETMARKET.COM in the amount of $42,269.10 for "Reboxed US Pack" accompanied by labels bearing counterfeit Frontline Plus marks.

d. On or about September 9, 2013, a wire transfer originated from a bank account in the name of VETMARKET.COM to another bank account in the name of WILLIAM HUMPHREYS in the amount of $46,000.00 for reboxed pet products accompanied by labels bearing counterfeit Frontline Plus marks.

e. On or about September 13, 2013, a wire transfer in the amount of $45,344.88 originated from a bank account in the name of defendant WILLIAM HUMPHREYS to a bank account in the name of A.E. GLOBAL.  Under the "Reason" section of the transfer was listed

"ALLEN H SMITH POA" with a listed driver's license of D….19327, belonging to defendant ALLEN SMITH.

f.  On or about November 6, 2013, A.E. GLOBAL sold $498,745.20 worth of pet products accompanied by labels bearing counterfeit Frontline Plus marks to SUN CITY PET MARKET.

g.  On or about November 7, 2013, a wire transfer in the amount of $498,745.20 originated from a bank account owned by FCE, INC. to a bank account owned by VETMARKET.COM.

h.  On or about November 8, 2013, a wire transfer in the amount of $498,745.20 originated from a bank account owned by defendant WILLIAM HUMPHREYS to a bank account associated with A.E. GLOBAL with a named beneficiary of defendant IAIN NIGEL MACKELLAR for the sale of "FL PLUS 3 PACK USG."

i.  On or about November 8, 2013, a wire transfer in the amount of $530,000 originated from a bank account owned by VETMARKET.COM to a bank account owned by defendant WILLIAM HUMPHREYS.

j.  On or about November 8, 2013, a wire transfer in the amount of $518,425.00 originated from a bank account owned by defendant WILLIAM HUMPHREYS to a bank account with a named beneficiary of defendant IAIN NIGEL MACKELLAR.  The wire confirmation was conducted by defendant ALLEN SMITH.

k.  In 2013, the co-conspirators sold counterfeit Frontline Plus to Target stores in Houston, Texas and other locations.  In fact, FCE, INC. was the sole provider of Frontline Plus for Target at that time.  Merial examined samples of the Frontline Plus that FCE, INC. had sold to Target.  Merial determined that (1) the product itself was not the authentic Frontline Plus product manufactured by Merial; and (2) the counterfeit product was also in boxes with labels bearing a counterfeit Frontline Plus mark.

l.  On or about December 5, 2013, a shipment of 4,800 pieces of pet products labeled with counterfeit Frontline Plus marks originating from the United Kingdom was received and signed for by "A. Smith" in Sun City, Arizona.

m.  On or about December 5, 2013, a wire transfer in the amount of $101,685.68 originated from a bank account associated with FCE, INC. to a bank account associated with VETMARKET.COM in the name of defendant WILLIAM HUMPHREYS.

n.  On or about December 23, 2013, boxes of counterfeit packaged Frontline Plus were discovered at FCE, INC. located at 27134 Paseo Espada, Suite 302 in San Juan Capistrano, CA, a location controlled by C.M.

o.  On or about December 23, 2013, an invoice was discovered from A.E. GLOBAL to RIZING SUN, LLC dated September 5, 2013.  The

invoices stated that a total of $42,269.10 of products depicted as "RE-BOXED US PACK" were purchased.

p. On or about April 15, 2015, S.G. wired funds to defendant LAM NGOC TRAN, aka MARK TRAN, for the sale of "reboxed" Frontline Combo, "reboxed" Frontline Plus, and Heartgard Plus. These products were received in the Southern District of Texas.

q. On or about April 15, 2015, defendant IAIN NIGEL MACKELLAR stated to S.G. that MACKELLAR would have to speak with his "printer" regarding the ability to manufacture more Frontline Combo and stated it was too problematic to have the lot number printed on the exterior package of the product to match the lot number printed on the internal package of the product.

r. On or about April 15, 2015, funds were wired by S.G to a bank account in the name of A.E. GLOBAL, owned by defendant IAIN NIGEL MACKELLAR for the sale of Frontline Combo veterinary product manufactured for a foreign market and placed in a counterfeit Frontline Plus box, and prescription veterinary drugs named Comfortis and Trifexis manufactured for a foreign market. These products were received in the Southern District of Texas.

s. On or about April 20, 2015, the shipment of reboxed Frontline Plus labeled veterinary products purchased on April 15, 2015, from

defendant LAM NGOC TRAN, aka MARK TRAN, was received in the Southern District of Texas.

t.   On or about May 4, 2015, the shipment of reboxed Frontline Plus labeled veterinary product manufactured for the foreign market purchased from defendant IAIN NIGEL MACKELLAR was received in the Southern District of Texas, and prescription veterinary drugs named Comfortis and Trifexis manufactured for a foreign market. The indicated shipper HUMANE RESCUE came from an address in the United Kingdom.  The contents of the shipment were declared as "PC PRODUCTS" and had an accompanying letter enclosed which stated that the products were a donation as a result of hurricanes, when in fact the letters were used as a tool by defendant IAIN NIGEL MACKELLAR to evade seizure by United States Custom officials.

u.   On or about June 3, 2015, a wire transfer originated from the Southern District of Texas in the amount of $15,108.24 to a Citibank account with the last four digits x1060, an account owned by defendant LAM NGOC TRAN, aka MARK TRAN, for purchase of veterinary products in boxes with labels bearing counterfeit Frontline Plus marks.

v.   On or about June 8, 2015, a wire transfer originated from the Southern District of Texas in the amount of $20,210.40 to Barclays Bank account with the last four digits x4166, an account for A.E. GLOBAL for reboxed Frontline Plus product.

w.  On or about June 8, 2015, veterinary products in boxes with labels bearing counterfeit Frontline Plus marks from defendant LAM NGOC TRAN, aka MARK TRAN, were received in the Southern District of Texas.

x.  On or about June 15, 2015, veterinary products in boxes with labels bearing counterfeit Frontline Plus marks from defendant IAIN NIGEL MACKELLAR, were received in the Southern District of Texas.

y.  On or about June 17, 2015, a wire transfer from the Southern District of Texas in the amount of $4,620.20 was transmitted to a Citibank account with the last four digits x1060, an account owned by defendant LAM NGOC TRAN, aka MARK TRAN, for a quantity of "Combo Reboxed Frontline Plus", "Reboxed Frontline Plus", and prescription veterinary drugs named Comfortis and Trifexis.

z.  On or about June 22, 2015, veterinary products in boxes with labels bearing counterfeit Frontline Plus marks from defendant IAIN NIGEL MACKELLAR, were received in the Southern District of Texas.

**All in violation of Title, 18, United States Code, Section 371.**

## COUNTS TWO THROUGH FOUR
### (Wire Fraud – 18 U.S.C. § 1343 )

15.    Paragraphs 1-10 of the Introduction of Count One are incorporated and re-alleged herein.

## A.    THE SCHEME

16.    From on or about the dates set forth below, the defendants listed below, aided and abetted by others known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud others, both known and unknown to the Grand Jury, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## B.    MANNER AND MEANS

17.    Paragraph 13 of the Manner and Means of Count One is incorporated and re-alleged herein.

## C.    EXECUTION OF THE SCHEME TO DEFRAUD

18.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendants listed below, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DEFENDANT | WIRE COMMUNICATION |
|---|---|---|---|
| 2 | June 3, 2015 | LAM NGOC TRAN aka MARK TRAN | $15,108.24 wire transfer from a Chase Bank account with the last four digits x3456 in the Southern District of Texas to Citibank account with the last four digits x1060 in the name of LAM TRAN |
| 3 | June 8, 2015 | IAIN NIGEL MACKELLAR | $20,210.40 wire transfer from a Chase Bank account with the last four digits x3456 in the Southern District of Texas to a Barclays Bank account with the last four digits x4166 in the name of A.E. GLOBAL, owned by IAIN NIGEL MACKELLAR |
| 4 | June 17, 2015 | LAM NGOC TRAN aka MARK TRAN | $4,620.20 wire transfer from a Chase Bank account with the last four digits x3456 in the Southern District of Texas to Citibank account with the last four digits x1060 in the name of LAM TRAN |

**All in violation Title 18, United States Code, Sections 1343 and 2.**

## F.  COUNTS FIVE THROUGH NINE
### (Mail Fraud)
### 18 U.S.C. § 1341

18.    Paragraphs 1-10 of the Introduction of Count One are incorporated and re-alleged herein.

## A.    THE SCHEME

19.    From on or about the dates set forth below, the defendants listed below, aided and abetted by others known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud others, both known and unknown to the Grand Jury, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

B.    **MANNER AND MEANS**

20.    Paragraph 13 of the Manner and Means of Count One is incorporated and re-alleged herein.

C.    **EXECUTION OF THE SCHEME TO DEFRAUD**

21.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendants listed below, with the intent to defraud, willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises.

22.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants listed below, aided and abetted by others known and unknown to the Grand Jury, knowingly placed and caused to be placed in an authorized depository for mail, to be sent and delivered by the Postal Service and private and commercial interstate carriers, the following matters:

| COUNT | ON OR ABOUT DATE | DEFENDANT | ITEM SENT |
|-------|------------------|-----------|-----------|
| 5 | April 20, 2015 | LAM NGOC TRAN aka MARK TRAN | Reboxed Frontline Plus sent to an address in Houston, Texas |
| 6 | May 4, 2015 | IAIN NIGEL MACKELLAR | Reboxed Frontline Plus sent to an address in Sugarland, Texas |
| 7 | June 8, 2015 | LAM NGOC TRAN aka MARK TRAN | Reboxed Frontline Plus sent to an address in Houston, Texas |

| 8 | June 15, 2015 | IAIN NIGEL MACKELLAR | Reboxed Frontline Plus sent to an address in Houston, Texas |
| 9 | June 22, 2015 | IAIN NIGEL MACKELLAR | Reboxed Frontline Plus sent to an address in Houston, Texas |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## G. COUNT TEN

**(Trafficking in Counterfeit Labels, Documentation, and Packaging)**
**18 U.S.C. § 2320(a)**

23.    Paragraphs 1-14 are incorporated and re-alleged herein.

24.    Beginning in or October of 2011 and continuing thereafter to the present in the Houston Division of the Southern District of Texas and elsewhere, defendant

LAM NGOC TRAN aka MARK TRAN,

aided and abetted by others known and unknown to the Grand Jury, did intentionally traffic and attempt to traffic in labels, documentation, and packaging, namely, labels, documentation and packaging for veterinary products, knowing that a counterfeit mark has been applied to such labels, documentation and packaging, that is, the Frontline and Frontline Plus trademarks used to identify a veterinary product marketed by Merial, and the use of which counterfeit mark was likely to cause confusion, to cause mistake, and to deceive.

**In violation of Title 18, United States Code, Sections 2320(a) and 2.**

## H.  COUNT ELEVEN

**(Trafficking in Counterfeit Labels, Documentation, and Packaging)**
**18 U.S.C. § 2320(a)**

25.    Paragraphs 1-14 are incorporated and re-alleged herein.

26.     Beginning in or about October of 2011, and continuing thereafter to the present in the Houston Division of the Southern District of Texas and elsewhere, defendant

IAIN NIGEL MACKELLAR,

aided and abetted by others known and unknown to the Grand Jury, did intentionally traffic and attempt to traffic in labels, documentation, and packaging, namely, labels, documentation and packaging for veterinary products, knowing that a counterfeit mark has been applied to such labels, documentation and packaging, that is, the Frontline and Frontline Plus trademarks used to identify a veterinary product marketed by Merial, and the use of which counterfeit mark was likely to cause confusion, to cause mistake, and to deceive.

**In violation of Title 18, United States Code, Section 2320(a) and 2.**

## I.   COUNT TWELVE

**(Smuggling Goods into the United States)**
**18 U.S.C. § 545**

27.     Paragraphs 1-13 are incorporated and re-alleged herein.

28.     Beginning in or about October of 2011, and continuing thereafter to the present in the Houston Division of the Southern District of Texas and elsewhere, defendant

IAIN NIGEL MACKELLAR,

aided and abetted by others known and unknown to the Grand Jury, fraudulently and knowingly imported and brought into the United States merchandise contrary to law,

namely, labels, documentation, and packaging knowing that a counterfeit mark has been

applied thereto, in violation of Title 18, United States Code, Section 2320(a).

**In violation of Title 18, United States Code, Sections 545 and 2.**

## NOTICE OF FORFEITURE
### (18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c))

29.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28,

United States Code, Section 2461(c), the United States gives notice to the defendants

IAIN NIGEL MACKELLAR,
LAM NGOC TRAN aka MARK TRAN,
ALLEN SMITH, and
WILLIAM HUMPHREYS

that upon conviction of the offenses charged in Counts One through Nine of this

indictment, the following property is subject to forfeiture:

All property, real or personal, which constitutes or is derived from proceeds

traceable to such violations.

## NOTICE OF FORFEITURE
### (18 U.S.C. §2323(b))

30.     Pursuant to Title 18, United States Code, Section 2323(b), the United States

gives notice to defendants

IAIN NIGEL MACKELLAR, and
LAM NGOC TRAN aka MARK TRAN

that upon conviction for a violation of Title 18, United States Code, Section 2320, as

charged in Counts 10 and 11 of this Indictment, the following property is subject to

forfeiture:

a.  all articles, the making or trafficking of which is prohibited by federal law;

b.  all property used, or intended to be used, in any manner or part to commit or facilitate the commission of such offense; and

c.  all property constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

## NOTICE OF FORFEITURE
## (18 U.S.C. §982(a)(2)(B))

31.     Pursuant to Title 18, United States Code, Section 982(a)(2)(B) , the United States gives notice to defendant

### IAIN NIGEL MACKELLAR

that upon conviction for a violation of Title 18, United States Code, Section 545 as charged in Count Twelve of this Indictment, the following property is subject to forfeiture:

a.  all property constituting, or derived from, proceeds the person obtained directly or indirectly as a result of such violation.

## MONEY JUDGMENT

32.     Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable.

## SUBSTITUTE ASSETS

33.     Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of a defendant,

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture notice.

A TRUE BILL:

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:  _____
JENNIFER B. LOWERY
Assistant United States Attorney
Southern District of Texas

_____
JOHN H. ZACHARIA
Assistant Deputy Chief for Litigation
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section